## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN MICHIGAN

DOUGLAS NEAL,

     Plaintiff,

                                    Case No.

v.

                                    Hon.

AK STEEL CORPORATION,

     Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, Douglas Neal (hereinafter "Neal"), by and through his attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for his First Amended Complaint against Defendant states as follows:

1.     Plaintiff, Douglas Neal, is a resident of the City of Redford, County of Wayne and State of Michigan.

2.     Defendant, AK Steel Corporation (hereinafter "AK") is a foreign corporation whose resident address is located at 40600 Ann Arbor Rd., E., Suite

201, Plymouth, Michigan 48170-4675 and whose resident agent in The Corporation Company.

3.      Jurisdiction and venue are proper in the District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

5.      Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful racial discrimination/harassment and retaliation in violation of 42 U.S.C. §1981, Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. which resulted in emotional and economic damages to Plaintiff.

## GENERAL ALLEGATIONS

6.      Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7.      Plaintiff is an African-American male who began his employment with Defendant, AK on June 19, 2000 and is currently employed as a Shipping Receiver in the Basic Oxygen Furnace (BOF) department.

8.      During his employment Plaintiff was subjected to a hostile work environment and adverse employment action due to his race.

9.      From approximately 2005 to 2016 Plaintiff was employed as a Senior Operating Technician (SOT), pay level 5, in the Ladle Refining Management Department (LRF).

10.     In or about May 2016, Plaintiff was approached by someone from Defendant, AK's Labor Relations Department and was told that because he had made a mistake in the steel fabrication process, he was now disqualified from the SOT position, and that he was to be sent home without pay for seven days.

11.     Plaintiff responded that he had not made the alleged mistake in the fabrication process, and that he was still in the middle of working on the steel in question (adding manganese, etc.) when the supervisor told him they were out of time and they would have to ship that steel out despite its imperfections.

12.     The Labor Relations Representative ignored Plaintiff's explanation regarding the faulty product and reiterated that he was now disqualified from the SOT position. Plaintiff was then transferred to the position of crane operator.

13.     At the same time, Plaintiff was aware of similarly situated Caucasian SOTs who had in fact made the same mistake of which Plaintiff was accused, but were given multiple chances while Plaintiff was removed after just one allegation.

14.     Plaintiff filed a Grievance over the disqualification and demotion as well as filing a complaint with the EEOC, Charge No. 471-2016-02626.

15.     While the Grievance and EEOC Charge were pending Plaintiff worked as a Crane Operator in the Caster Building.

16.     During his time as a crane operator in the Caster Building, Plaintiff experienced further mistreatment and discrimination.

17.     Plaintiff's Supervisor in the Caster Building became obsessed with monitoring Plaintiff's work, writing him up at every opportunity for transgressions he did not commit.

18.     On one occasion, Plaintiff was traversing with the crane and honked the horn per Defendant, AK's policy. At the time Plaintiff honked, his supervisor was out of earshot. When he discovered Plaintiff traversing with the crane, he wrote him up for failure to signal with is horn, despite Plaintiff having done so, and having indicated so.

19.     On other occasions, Plaintiff's supervisor forced him to submit to drug and alcohol urine screenings for allegedly bumping the crane into an object.

20.     Plaintiff observed his Caucasian coworkers bump objects with the crane, or fail to use the horn on the crane, in plain sight of the Supervisor, who took no action against them, and did not force them to submit to drug and alcohol urine screenings.

21.     Plaintiff's supervisor in the Caster Building also denied him access to essential training on the operation of the crane, while providing immediate and comprehensive training to Caucasian employees.

22.     Finally, Plaintiff asked to be transferred out of the Caster Building, as he could no longer tolerate any further discrimination and abuse from his Supervisor.

23.     Plaintiff was then transferred to the Banyard, and told to continue working as a Crane Operator.

24.     While working in the Banyard, Plaintiff was asked by multiple Supervisors from the LRF department to come "lend them a hand."

25.     Plaintiff, at the request of the aforementioned Supervisors, began spending most of his off-time, when he was not working in the Banyard, "lending a hand" in the LRF department.

26.     The work Plaintiff was doing in the LRF Department should have come with an attendant pay raise to Pay Level 5, but instead Plaintiff was underpaid for his time there at the lower rate of a Banyard employee.

27.     While Plaintiff was working in the Banyard and unofficially working in the LRF Department, Defendant, AK, held a meeting with Plaintiff regarding the Grievance he filed.

28.    At the meeting, Plaintiff was offered his old job back, but he declined to take it because he was satisfied with the overtime work he was then performing, despite the fact that he was still being underpaid for such work.

29.    Also as a result of the overtime he was working he did not pursue his EEOC claim.

30.    In March of 2020, Plaintiff learned that his department in the Banyard was being eliminated and that he would have to bid on another position.

31.    Plaintiff asked that he be given the position of Outside Operator in the LRF Department, but was told that had been disqualified for that position, despite having performed that position unofficially for the last three years.

32.    Plaintiff argued that not only was his disqualification baseless, but that he had been disqualified from the position of SOT, not Outside Operator. Nevertheless, Defendant denied Plaintiff the position, and transferred him to the role of Shipping Receiver.

33.    Following the shuttering of Plaintiff's department in the Banyard, Plaintiff and other African-American employees were transferred to other positions where their pay was cut substantially.

34.    At the same time Plaintiff and other African-American employees were being transferred to lower paying jobs, Defendant was placing similarly

situated Caucasian employees, who had been disqualified from their old positions into their old positions, or into new positions as Outside Operators.

35. During the time period in question, Defendant, AK was Plaintiff's employer and Plaintiff was its employee within the meaning of the Title VII, 42 U.S.C. §1981 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.

36. Defendant is responsible for all acts committed by its agents, representatives and employees within the scope of their employment.

37. Defendants, through their agents, representatives and employees, were predisposed to harass, discriminate and retaliate against Plaintiff on the basis of his race and acted in accordance with that predisposition.

38. Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

39. On or about January 13, 2021 the EEOC issued a Right to Sue letter permitting Plaintiff to file a claim for race discrimination and retaliation pursuant to the Civil Rights Act of 1964.

## COUNT I
## RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

40. Plaintiff incorporates by reference paragraphs 1 through 39 of the

Complaint as

7

though fully set forth herein.

41.     Plaintiff belongs to a protected class as an African American.

42.     Plaintiff was subjected to unwelcome communication and conduct due to his race, including but not limited to:

   a) Being treated more harshly by members of management of the Defendant, AK;

   b) Being denied training by members of management of the Defendant, AK;

   c) Being harassed and hounded by his supervisor disproportionately compared to similarly situated Caucasian employees, and;

   d) Being placed into worse and lower paying positions than similarly situated Caucasian employees

43.     The unwelcome conduct and communication was intended to and did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment.

44.     Pursuant to Title VII of Civil Rights Acts of 1964, Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation from his employer based upon his race.

45.     Plaintiff's race was a factor in Defendants' actions, treatment, conduct and attitude towards Plaintiff.

46.     Defendant is Plaintiff's employer within the meaning of Title VII of Civil Rights Acts of 1964.

47.     Plaintiff was subjected to repeated and continuous discriminatory treatment based upon his race by Defendant, their employees, representatives and agents including to being subjected to adverse employment action to the point where he was required to work in a hostile work environment and suspended without pay.

48.     Plaintiff is entitled to exemplary and compensatory damages pursuant to Title VII of Civil Rights Acts of 1964 as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

49.     Defendant, their agents, employees and representatives created an offensive and hostile work environment against Plaintiff as a direct result of Plaintiff's race by reason of the following acts and/or omissions:

> a) Violating the laws against discrimination by engaging in racial discrimination in the workplace;
>
> b) Imposing discipline based on race;
>
> c) Preventing Plaintiff from having full and fair opportunities to advance in his position based upon his race; and
>
> d) Creating a hostile work environment for Plaintiff by discriminating against him, harassing him, and retaliating against him due to his race.

50.     Defendant owed Plaintiff as an African-American employee, a duty to adequately advise their employees, agents and representatives to refrain from discriminating against employees.

9

51.     Defendant owed Plaintiff as an African-American, a duty to refrain from discriminating against him, harassing him and treating him differently as a direct result of his race.

52.     Defendant breached and violated their duties owed to Plaintiff, by reason of the following acts and/or omissions:

   a. Failing to screen and place in supervisory positions, persons who would be capable of being competent and law abiding supervisors, and with particular reference to enforcing laws against discrimination in the workplace;

   b. Giving supervisory authority to persons who were known to have propensities as would make them unfit to serve in the capacity of supervisor over employees;

   c. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace; and

   d. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees.

53.     As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of Defendant and their agents, representatives and employees.

54.     Because of the unlawful conduct of Defendant, their agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of

earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $25,000.00, plus exemplary damages, together with costs, interest, attorney fees and any other relief this Honorable Court deems appropriate

## COUNT II
## RACIAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF 42 U.S.C. §1981

55.     Plaintiff incorporates by reference paragraphs 1 through 54 of the Complaint as though fully set forth herein.

56.     Plaintiff belongs to a protected class as an African American.

57.     Plaintiff was subjected to unwelcome communication and conduct due to his race.

58.     The racially charged conduct towards Plaintiff was unwelcome.

59.     Defendant's conduct was intentional and motivated by Plaintiff's race as an African-American.

60.     The conduct was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

61.     Plaintiff believed his work environment to hostile and abusive as a direct result of Defendant's conduct.

62.     Plaintiff suffered adverse tangible employment actions as a result of the hostile work environment.

63.     The ongoing and continuing unwelcome conduct and communication was intended to and did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff.

64.     Pursuant to 42 U.S.C. §1981 Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation, including suspension from his employer and/or supervisors based upon his race.

65.     Plaintiff's race was a factor in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

66.     Plaintiff was subjected to repeated and continuous discriminatory treatment, up to and including suspension based upon his race by Defendant, to the point where his status as an employee has been detrimentally affected by Defendant and Plaintiff has been subjected to work in a hostile work environment.

67.     Plaintiff is entitled to punitive, exemplary and compensatory damages pursuant to 42 U.S.C. §1981 as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

68. Because of the unlawful conduct of Defendant, their agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest, and attorney fees and any other relief this Honorable Court deems appropriate and just.

## COUNT III
## RACIAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCLA 37.2201, *et seq*

69. Plaintiff incorporates by reference paragraphs 1 through 68 of the Complaint as though fully set forth herein.

70. Plaintiff belongs to a protected class as an African American.

71. Plaintiff was subjected to unwelcome communication and conduct.

72. The ongoing and continuing unwelcome conduct and communication was intended to and did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff and Plaintiff was ultimately suspended due to his race.

13

73.    Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.  Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation, including suspension from his employer and/or supervisors based upon his race.

74.    Plaintiff's race was a factor in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

75.    Plaintiff was subjected to repeated and continuous discriminatory treatment, to the point where his status as an employee has been detrimentally affected by Defendant and Plaintiff has been subjected to work in a hostile work environment.

76.     Plaintiff is entitled to exemplary and compensatory damages pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*. as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

77.    Defendants created an offensive and hostile work environment against Plaintiff as a direct result of Plaintiff's race by reason of the following acts and/or omissions:

   a.  Violating the laws against discrimination by engaging in racial discrimination in the workplace;

   b.  Imposing discipline based on race;

   c.  Taking adverse employment action against Plaintiff based upon his race;

14

    d. Preventing Plaintiff from having full and fair opportunities to advance in his position based upon his race; and

    e. Creating a hostile work environment for Plaintiff by discriminating against him, harassing him, and retaliating against him due to his race.

78. Defendants owed Plaintiff as an African-American employee, a duty to refrain from discriminating against employees.

79. Defendants owed Plaintiff as an African-American, a duty to refrain from discriminating against him, harassing him and treating him differently as a direct result of his race.

80. Defendants breached and violated their duties owed to Plaintiff, by reason of the following acts and/or omissions:

    a. Failing to screen and place in supervisory positions, persons who would be capable of being competent and law abiding supervisors, and with particular reference to enforcing laws against discrimination in the workplace;

    b. Giving supervisory authority to persons who were known to have propensities as would make them unfit to serve in the capacity of supervisor over employees;

    c. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace; and

    d. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees.

81. As a direct and proximate result of the actions of Defendants, Plaintiff was the subject of discriminatory conduct on the part of Defendants.

15

82.    Because of the unlawful conduct of Defendants, their agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

## COUNT IV
## RETALIATION

83.    Plaintiff incorporates by reference paragraphs 1 through 82 of the Complaint as though fully set forth herein.

84.    Pursuant to 42 U.S.C. 1981, §Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*, Plaintiff is guaranteed the right to be free from discrimination from his employer and/or supervisors based upon his race.

85.    Plaintiff's race was a factor in Defendant's employment decisions.

86.    Defendant was Plaintiff's employer within the meaning of 42 U.S.C. 1981, Title VII and the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.

16

87.     During the course of his employment with Defendant, Plaintiff was subjected to constant unwelcome racial discrimination creating a hostile work environment by Defendant.

88.     The racial discrimination created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

89.     Plaintiff complained to upper management of Defendant that he was being discriminated against due to his race and that he was being subjected to a hostile work environment.

90.     Defendant had actual and constructive notice that it was creating an intimidating, hostile and offensive work environment for Plaintiff.

91.     Despite having notice of the racial discrimination and conduct toward Plaintiff, Defendant failed to take any remedial action, but instead took adverse employment action against Plaintiff based upon his race and in retaliation for his complaints of racial discrimination.

92.     The racial discrimination and conduct by Defendant and Defendant's failure to take any remedial action violate 42 U.S.C. 1981, Title VII and the Michigan Elliott- Larsen Civil Rights Act, MCL 37.2101 *et seq*.

93.     As a proximate result of the Defendant's retaliation of Plaintiff, Plaintiff has sustained injuries including, but not limited to, physical pain and

17

suffering, mental anguish,  fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

Dated: March 17, 2021

18

## <u>DEMAND FOR JURY TRIAL</u>

NOW COMES, Plaintiff, Douglas Neal, by and through his attorneys, Scott

P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all

issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey_____
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, Michigan 48025
    (248) 540-6800-telephone
    (248) 540-6814-fax
    sbatey@bateylaw.com

Dated:  March 17, 2021